IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARSHALL MACKLER, et al.** **Plaintiffs,** v. **SME, INC. USA, et al.** **Defendants.** | CIVIL ACTION NO. 23-4353 |

MEMORANDUM OPINION

Rufe, J.                                                                                                                 August 8, 2024

      Plaintiffs Marshall Mackler, Hilary Mackler, and Ari Fuchs filed this lawsuit against Defendants SME, Inc. USA, Superior Medical Equipment Group Inc., David L. Rouen, Jr., David L. Rouen, III, Pamela C. Rouen, and Rosemary Furman Rouen, alleging breach of contract and other state-law claims as well as violations of the North Carolina Unfair and Deceptive Trade Practices Act.[1] The claims arise from a longstanding business relationship between two families. Defendants have moved to transfer the case to the Eastern District of North Carolina, or in the alternative, to dismiss the First Amended Complaint for failure to state a claim. For the reasons set forth herein, Defendants' motion to transfer will be granted.

**I. BACKGROUND**

      The First Amended Complaint ("FAC") alleges the following facts.[2] In November 1992, Plaintiff Marshall Mackler entered into an oral business venture with Defendant David L. Rouen, Jr. to partner in developing and operating Superior Medical Equipment Group Inc. ("Superior Medical"), a Maryland corporation.[3] In December 1992, Marshall and David, Jr. memorialized

---

[1] N.C. Gen. Stat. § 75-1.1.

[2] FAC [Doc. No. 7].

[3] *Id.* ¶¶ 33–35. Because many of the parties have the surnames of Mackler or Rouen, first names are used for clarity.

the terms of their agreement by executing a Memorandum of Understanding (the "1992 MOU"), but Plaintiffs no longer have a copy of it.[4] Upon information and belief, the 1992 MOU did not contain a merger-and-integration clause, and therefore the agreement between the parties included both the material terms of the Oral Business Agreement and the 1992 MOU.[5] That month, upon finalizing the MOU, Marshall and David, Jr. registered Superior Medical as a foreign business corporation in Pennsylvania.[6]

In 1995, Hilary Mackler, Marshall's daughter, joined the venture as a partner.[7] In 1997, David, Jr. relocated from Maryland to North Carolina and established SME, Inc. USA ("SME"), a North Carolina corporation and successor entity to Superior Medical.[8] David, Jr. leased an office and warehouse facility for SME's operations.[9] The FAC refers to a series of agreements and assurances, as well as modifications to those agreements, between and among David, Jr., Marshall, and Hilary as the business grew over the following decades.[10] The FAC does not refer to any written agreements memorializing those agreements; in one instance, it notes explicitly that the terms were unwritten.[11] In September 2018, Ari Fuchs, Hilary's husband, began working for SME through the Macklers' existing sales team as part of the distribution business.[12]

---

[4] *Id.* ¶ 37.

[5] *Id.* ¶ 38.

[6] *Id.* ¶ 40.

[7] *Id.* ¶¶ 64–65.

[8] *Id.* ¶ 71.

[9] *Id.* ¶ 72.

[10] *See, e.g., id.* ¶ 65 (describing initial profit-share agreement as to Hilary); *id.* ¶ 75 (discussing initial allocation of equity interests); *id.* ¶ 88 (referencing assurances from David, Jr. about the Macklers' partnership status); *id.* ¶¶ 92, 94, 97, 99 (recounting the Macklers' capital contributions to fund SME's general operating expenses, including employee salaries); *id.* ¶ 101 (discussing division of advertising and marketing expenses).

[11] *See, e.g., id.* ¶ 130 (describing August 2016 modifications, while noting that "no written agreement was ever signed"); *see also id.* ¶¶ 133–34, 137, 161–63, 167 (detailing 2017, 2021, and 2023 modifications to the Macklers' equity interests, compensation, and roles).

[12] *Id.* ¶ 136.

On November 7, 2023, Plaintiffs filed suit against David, Jr., his family members, and the corporate entities for their alleged efforts to oust Plaintiffs from the business and deny them their profit shares and equity holdings.[13] On December 6, 2023, after the litigation had ensued, SME formally terminated Marshall and Hilary by letter.[14] On January 10, 2024, Plaintiffs filed the FAC, which added allegations relating to the formal terminations.[15]

On January 24, 2024, Defendants moved to transfer the case to the Eastern District of North Carolina.[16] Defendants' motion attached copies of the termination letters sent to Marshall and Hilary.[17] The December 6, 2023, termination letter addressed to Hilary enclosed a copy of an Independent Contractor Agreement ("ICA") signed by her and David, Jr., effective August 29, 2007, and containing a choice-of-law provision and a forum-selection clause.[18] The December 6, 2023, letter addressed to Marshall similarly enclosed an ICA signed by Marshall (in his capacity as President of Marshall A. Mackler & Associates) and David, Jr., also effective August 29, 2007, including the same choice-of-law provision and forum-selection clause.[19] Defendants now seek enforcement of those forum-selection clauses.

## II.  LEGAL STANDARD

A district court's decision whether to transfer a case pursuant to a forum-selection clause is governed by federal law, specifically 28 U.S.C. § 1404(a).[20] Section 1404(a) provides that "a

---

[13] Compl. [Doc. No. 1].

[14] *See* FAC ¶ 185 [Doc. No. 7].

[15] *Id.* ¶¶ 185–89.

[16] Defs.' Mot. Transfer [Doc. No. 10].

[17] Simon Decl., Exs. A and B [Doc. Nos. 10-3, 10-4].

[18] Simon Decl., Ex. A, H. Mackler ICA ¶ 19 [Doc. No. 10-3].

[19] Simon Decl., Ex. B, M. Mackler ICA ¶ 20 [Doc. No. 10-4].

[20] *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 32 (1988).

district court may transfer any civil action to any other district or division where it might have been brought," taking into consideration "the convenience of parties and witnesses" and "the interest of justice . . . ."[21] When a motion to transfer under § 1404(a) is predicated on enforcement of a forum-selection clause, the analysis is twofold. "First, a district court must determine whether the forum-selection clause is valid and enforceable."[22] Second, a district court must consider whether "extraordinary circumstances . . . clearly disfavor a transfer."[23] Because a valid forum-selection clause "represents the parties' agreement as to the most proper forum," the parties' private interests should not be considered as part of the analysis.[24]

## III. DISCUSSION

### A. Whether the Court May Consider the Independent Contractor Agreements

The Court first addresses a threshold matter. The ICAs containing the forum-selection clauses are not referenced in or attached to the FAC. It is Defendants' initial burden to "support their motion to transfer with any affidavits, depositions, stipulations, or other documents containing facts that would tend to establish the necessary elements for a transfer under 28 U.S.C. § 1404(a)."[25] In these circumstances, that burden would typically require presenting facts and evidence sufficient to establish the authenticity of the ICAs.[26] Because Defendants failed to

---

[21] 28 U.S.C. § 1404(a).

[22] *Silvis v. Ambit Energy, L.P.*, 90 F. Supp. 3d 393, 397 (E.D. Pa. 2015).

[23] *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 52 (2013).

[24] *Id.* at 63–64 (quoting *Stewart*, 487 U.S. at 31).

[25] *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756–57 (3d Cir. 1973).

[26] *See Bombin v. Sw. Airlines Co.*, 529 F. Supp. 3d 411, 417 (E.D. Pa. 2021) (declining to consider forum-selection clause in airline's terms and conditions because the unsworn allegations of defense counsel, and a declaration by an airline employee that failed to address those terms and conditions, were insufficient to establish that customers affirmatively accepted them); *Silvis*, 90 F. Supp. 3d at 397 n.3 (noting that in *Atlantic Marine*, which set forth a presumptive standard, the Court presupposed validity because it was undisputed by the parties). Plaintiffs noted in their briefings that the ICAs attached to Defendants' motion are not supported by affidavits from witnesses with personal knowledge that the Macklers had, in fact, signed the ICAs. *See* Simon Decl. [Doc. No. 10-2] (containing counsel's sworn but ultimately insufficient representations).

4

present adequate support, and because Plaintiffs' briefings initially suggested that they were objecting to the ICAs' authenticity,[27] the Court held a hearing on July 24, 2024, and required the attendance of all relevant witnesses.[28] During the hearing, Plaintiffs' counsel agreed that the Macklers had, in fact, signed the ICAs. The Court accepted counsel's representations, given that the Macklers and David, Jr., who were present and prepared to testify, raised no objection. Accordingly, the Court will consider the ICAs, including the forum-selection clauses, in deciding whether to transfer the case.

### B. Whether the ICAs are Valid and Enforceable

Plaintiffs raise several arguments as to why the Court should not enforce the forum-selection clauses. Under long-settled legal principles, forum-selection clauses are "prima facie valid," and the burden shifts to the resisting parties to show that enforcement would be "'unreasonable' under the circumstances," or that agreement was obtained by "fraud, undue influence, or overweening bargaining power . . . ."[29] Whether there were actual negotiations has no bearing on a forum-selection clause's validity.[30]

1. <u>Scope</u>

Plaintiffs contend that the ICAs, on their face, are too narrow in scope to encompass the parties' entire long-standing business relationship, as they omit essential terms relating to, *e.g.*, their capital-contribution requirements. Plaintiffs therefore argue that the ICAs cannot govern all of their present claims, which rely on unwritten agreements and modifications extraneous to the ICAs. In response, Defendants agreed during the July 24 hearing that there may have been other

---

[27] *See* Pls.' Resp. Opp'n at 2 [Doc. No. 11] ("It is not clear whether these are valid agreements . . . .").

[28] Order, July 16, 2024 [Doc. No. 14].

[29] *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1219 (3d Cir. 1991) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 12 (1972)).

[30] *Id.* (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 590–91 (1991)).

terms or adjustments subsequent to the execution of the ICAs, but asserted that the ICAs are the "best expression" of any agreement that existed between the parties.[31] Critically, however, Plaintiffs have not presented any facts or evidence suggesting that the forum-selection clauses specifically were ever modified or superseded.

To the extent that Plaintiffs challenge the scope of the forum-selection clauses themselves, "[t]he question of the scope of a forum selection clause is one of contract interpretation," and is thus governed by state law.[32] The ICAs signed by the Macklers each state:

> This Agreement shall be governed by and construed in accordance with the laws of the State of North Carolina. Each party hereto specifically consents to and agrees that any legal action or proceeding for enforcement of or breach of this Agreement *or any other claims which may arise out of their relationship* shall be instituted and maintained in the Superior Court in New Hanover County, North Carolina or the United States District Court for the Eastern District of North Carolina. Contractor consents to the jurisdiction of such courts and waives any objection relating to the basis for personal or in rem jurisdiction or to venue which Contractor may now or hereafter have in any such action.[33]

It is of no consequence whether this Court applies North Carolina or Pennsylvania law, "because both North Carolina and the forum state of Pennsylvania apply the traditional contract principle that when the language of a contract is clear and unambiguous on its face, [courts] must give effect to that plain meaning as a reflection of the intent of the parties."[34] The plain language of the forum-selection clauses reflects the parties' agreement that the North Carolina courts are the

---

[31] Mot. Hr'g Audio Tr., July 24, 2024, at 9:29 [Doc. No. 16]. To that point, Plaintiffs' counsel noted during the hearing that the Macklers' employment status in relation to SME had "always" been as independent contractors. *Id.* at 20:58; *see also id.* at 17:00 ("No dispute that they were independent contractors.").

[32] *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018).

[33] Simon Decl., Ex. A, H. Mackler ICA ¶ 19 [Doc. No. 10-3] (emphasis added); *see also* Simon Decl., Ex. B, M. Mackler ICA ¶ 20 [Doc. No. 10-4].

[34] *Podesta v. Hanzel*, 684 F. App'x 213, 217 (3d Cir. 2017) (citing *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004); *Weyerhaeuser Co. v. Carolina Power & Light Co.*, 127 S.E.2d 539, 541 (N.C. 1962)). Because the ICAs select the North Carolina courts, the North Carolina statute voiding certain forum-selection clauses does not apply. *Cf.* N.C. Gen. Stat. § 22B-3 (covering contracts entered into in North Carolina which require adjudication "in another state").

appropriate forum for "any other claims which may arise out of their relationship . . . ."[35]
Plaintiffs' claims fall within that broad scope.

   2. <u>Unreasonable or Obtained by Fraud</u>

Plaintiffs next argue that the broader context surrounding their signing of the ICAs dictates against their enforcement. Plaintiffs, through counsel, asserted at the July 24 hearing that the agreements were signed in 2010 (rather than the ICAs' effective date of August 29, 2007), and that David, Jr. requested the Macklers' signatures solely because he realized that there were no written agreements memorializing the parties' relationship, and he wanted formal documentation for an IRS audit.[36] Nothing about those circumstances is suggestive of fraud, undue influence, or unequal bargaining power. To the contrary, the allegations in the FAC suggest that the parties were experienced and sophisticated businesspeople.[37] The relative sophistication of the parties weighs strongly in favor of enforcing the forum-selection clauses to which the Macklers voluntarily agreed.[38]

Plaintiffs also contend that enforcement of the forum-selection clauses would be unreasonable because Defendants, through their own conduct, have never adopted the ICAs as the controlling agreements between the parties. Plaintiffs assert that it would be inequitable to permit Defendants to "cherry pick" the forum-selection clauses, while having previously ignored

---

[35] Simon Decl., Ex. A, H. Mackler ICA ¶ 19 [Doc. No. 10-3]; Simon Decl., Ex. B, M. Mackler ICA ¶ 20 [Doc. No. 10-4].

[36] Mot. Hr'g Audio Tr., July 24, 2024, at 17:07–19:20 [Doc. No. 16].

[37] FAC ¶ 127 [Doc. No. 7] (describing joint effort, including millions in capital contributions, to build SME "into a national business with many millions of dollars in annual revenues").

[38] *See PNC Equip. Fin., LLC v. Pak*, No. 19-4708, 2020 WL 6158238, at *5 (E.D. Pa. Oct. 21, 2020) (citing *Bremen*, 407 U.S. at 12).

other terms in the ICAs that might benefit Plaintiffs.[39] However, it is irrelevant at this stage whether Defendants breached the ICAs. An alleged breach is precisely the kind of dispute which a valid forum-selection clause is intended to govern.[40] Indeed, as courts in this District have observed, a forum-selection clause does not expire even upon termination of the underlying contract, because covered disputes may often include actions seeking post-termination enforcement of the contract's provisions.[41] Plaintiffs have failed to carry their burden in overcoming the forum-selection clauses' prima facie validity.

### C. Whether Extraordinary Circumstances Clearly Disfavor a Transfer

Once a court determines that a forum-selection clause is valid and enforceable, it must then consider whether "extraordinary circumstances" militate against enforcement.[42] A plaintiff's choice of forum merits no weight.[43] A court must consider only the public-interest factors under § 1404(a), while viewing the private-interest factors as weighing entirely in favor of the preselected forum.[44] The relevant public-interest factors include: "the enforceability of the judgment . . . ; practical considerations that could make the trial easy, expeditious, or inexpensive . . . ; the relative administrative difficulty in the two fora resulting from court congestion . . . ; the

---

[39] Pls.' Resp. Opp'n at 4 [Doc. No. 11]; Mot. Hr'g Audio Tr., July 24, 2024, at 23:21 [Doc. No. 16]. *But see id.* at 28:40 [Doc. No. 16] (clarifying Defendants' position that they view the entire ICAs, not only the forum-selection clauses, as the "best expression" of the parties' relationship).

[40] *See Tex. Source Grp., Inc. v. CCH, Inc.*, 967 F. Supp. 234, 237 (S.D. Tex. 1997) ("[I]t is altogether inconsistent for the plaintiffs to now argue that the forum-selection clause is unenforceable based on an alleged breach of the Agreement. Were the Court to rule otherwise, a party could defeat a validly negotiated forum-selection clause by simply alleging that the nonmoving party breached the contract, rendering the clause wholly superfluous.").

[41] *AAMCO Transmissions, Inc. v. Romano*, 42 F. Supp. 3d 700, 707 (E.D. Pa. 2014) (collecting cases); *First Fin. Mgmt. Grp., Inc. v. Univ. Painters of Balt., Inc.*, No. 11-5821, 2012 WL 1150131, at *3 (E.D. Pa. Apr. 5, 2012).

[42] *Atl. Marine*, 571 U.S. at 63.

[43] *Id.*

[44] *Id.* at 64.

local interest in deciding local controversies at home . . . ; the public policies of the fora . . . ; and the familiarity of the trial judge with the applicable state law in diversity cases . . . ."[45]

1. Enforceability of the Judgment

Defendants assert that judgments issued in this District and judgments issued in the Eastern District of North Carolina would be equally enforceable. Plaintiffs do not address enforceability (or any of the other public-interest factors). This factor does not disfavor transfer.

2. Practical Considerations for Trial

The Court is not aware of any reasons why trial proceedings in this case would be unduly burdensome in the Eastern District of North Carolina as compared to this District.[46] The parties and witnesses are located primarily in Pennsylvania or North Carolina. This factor also does not disfavor transfer.

3. Relative Administrative Difficulty in the Two Fora Resulting from Court Congestion

Defendants argue that the number of pending cases in this District far exceed those in the Eastern District of North Carolina, and note that this District has two judicial vacancies while the North Carolina district court has no vacancies.[47] Those arguments fail to consider the difference in the number of district judges in each forum. In any event, this Court has no reason to conclude that the relative caseload of either jurisdiction weighs one way or the other. This factor does not disfavor transfer.

---

[45] *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879–80 (3d Cir. 1995) (citations omitted).

[46] The Court is careful not to conflate the public interest of practical trials with private interests such as party and witness convenience, the latter of which cannot be considered in the face of a valid forum-selection clause.

[47] Defs.' Mem. Supp. Mot. Transfer at 17 [Doc. No. 10-1].

9

4. Local Interest in Deciding Local Controversies

Plaintiffs' counsel represented during the July 24 hearing that SME does business in states other than North Carolina, suggesting that the present controversy is not "local" to one state.[48] However, the FAC alleges that SME is a North Carolina corporation, has been operating in North Carolina for nearly 30 years, and has a warehouse and employees in North Carolina, and that Plaintiffs regularly traveled to North Carolina to visit the office.[49] Even assuming that SME had business operations in other states, this factor does not disfavor transfer.

5. Public Policies of the Fora

Defendants assert that Pennsylvania has a strong public policy of enforcing forum-selection clauses.[50] The Court agrees and further observes that, by statute, North Carolina has expressed a strong policy preference in favor of adjudicating local contractual disputes in its own courts.[51] There are no indications that the forum-selection clauses here violate any strong public policies of either forum. This factor weighs in favor of transfer.

6. Forum That Is at Home With the Law

There is no doubt that the United States District Court for the Eastern District of North Carolina would be "at home with the law" in overseeing a trial of this diversity case.[52] Aside from Plaintiffs' broader arguments contesting the general validity of the ICAs, which this Court has rejected, Plaintiffs do not specifically challenge the choice-of-law provisions requiring application of North Carolina law (as relevant to Plaintiffs' breach of contract and other state-law

---

[48] Mot. Hr'g Audio Tr., July 24, 2024, at 33:20–33:50 [Doc. No. 16].

[49] *See* FAC ¶¶ 71–72, 77, 81, 97, 115–16 [Doc. No. 7].

[50] Defs.' Mem. Supp. Mot. Transfer at 17 [Doc. No. 10-1] (citing *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 247 (E.D. Pa. 2007)).

[51] *See* N.C. Gen. Stat. § 22B-3.

[52] *Atl. Marine*, 571 U.S. at 62 n.6 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

claims). Of note, the FAC also asserts a claim under the North Carolina Unfair and Deceptive Trade Practices Act.[53] That points in favor of the Eastern District of North Carolina as the better forum for this dispute.[54]

In short, none of the § 1404(a) public-interest factors constitutes an extraordinary circumstance militating against the presumptive enforcement of these forum-selection clauses.

### D. Whether the ICAs Can Be Enforced Against Non-Signatory Ari Fuchs

The Court addresses a final issue. Defendants have not produced an ICA (or any other written agreement) signed by Plaintiff Ari Fuchs, Hilary's husband. The FAC alleges that Fuchs did not join the business until September 2018.[55] The parties confirmed during the July 24 hearing that they are not aware of any written agreements signed by Fuchs. The remaining question, then, is whether the forum-selection clauses to which Marshall and Hilary voluntarily agreed are enforceable against Fuchs, a non-signatory. "Under traditional principles of contract law, non-signatories may be bound by a forum selection clause if they are intended third-party beneficiaries of the contract, or if they are closely related parties."[56]

1. <u>Choice of Law</u>

Although federal law controls the enforceability of a forum-selection clause, matters of contract interpretation—such as determining a forum-selection clause's scope with respect to a non-signatory—are analytically distinct and traditionally governed by state law.[57] However, the Third Circuit has recognized that if parties rely predominantly on federal case law when

---

[53] *See* FAC ¶¶ 232–39 [Doc. No. 7].

[54] *See Piper Aircraft Co.*, 454 U.S. at 241 n.6 (listing among the relevant public interests a court's familiarity with the "law that must govern the action").

[55] FAC ¶ 136 [Doc. No. 7].

[56] *McGraw-Hill*, 909 F.3d at 59 (citations omitted).

[57] *Id.* at 58 (citations omitted).

addressing a component of the analysis, then courts may accept what amounts to a stipulation by the parties and apply federal law.[58] Application of federal law may be appropriate even where a contract contains a choice-of-law provision, because a court may presume that parties who make little reference to pre-selected law are not relying on any distinctive features of that law.[59]

Aside from a passing reference to a case from the North Carolina Court of Appeals in their opening brief,[60] Defendants rely exclusively on federal case law in making arguments under the closely related parties doctrine.[61] Plaintiffs do not address the doctrine in their briefings, but at the July 24 hearing, they similarly relied on Third Circuit precedent rather than North Carolina or Pennsylvania law in arguing that the doctrine does not apply to Fuchs. Accordingly, this Court will apply federal common law in assessing whether Fuchs is a closely related party.

2. Closely Related Parties

"The closely related parties doctrine is a form of equitable estoppel."[62] The doctrine recognizes that a non-signatory may, based on principles of equity, be bound from avoiding a forum-selection clause (or other contractual provision) because of his close relationship to a contract and its signatories.[63] "In determining whether a non-signatory is closely related to a contract, courts consider the non-signatory's ownership of the signatory, [his] involvement in the

---

[58] *Id.* (citing *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1074 (3d Cir. 1997)).

[59] *Wyeth*, 119 F.3d at 1074 (applying "general contract law principles" in light of parties' briefing, notwithstanding choice-of-law provision specifying English law); *McGraw-Hill*, 909 F.3d at 58–59 (applying federal law in applying closely related parties doctrine, notwithstanding choice-of-law provision specifying New York law); *see also In re Howmedica Osteonics Corp.*, 867 F.3d 390, 407 n.11 (3d Cir. 2017) (noting that closely related parties doctrine may be analyzed as a matter of federal common law because the doctrine is governed by § 1404(a), a federal statute).

[60] Def.'s Mem. Supp. Mot. Transfer at 10 [Doc. No. 10-1] (citing *Jarman v. Twiddy & Co. of Duck, Inc.*, 889 S.E.2d 488, 499 (N.C. Ct. App. 2023)).

[61] *See id.* at 10–12, 13–15. At oral argument on the motion, Defendants exclusively cited Third Circuit precedent.

[62] *McGraw-Hill*, 909 F.3d at 62–63.

[63] *See E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 199 (3d Cir. 2001) (discussing closely related parties doctrine in the context of arbitration clauses).

negotiations, the relationship between the two parties, and whether the non-signatory received a direct benefit from the agreement."[64]

In this Circuit, there is also a foreseeability requirement: "[B]efore binding a non-signatory as a closely related party," a court must find "that enforcement of the clause by or against the non-signatory would be foreseeable."[65] In other words, it must be found that the non-signatory "had an awareness of the clause, its contents, and that it might be defensively invoked," based on "some evidentiary basis, other than pure speculation . . . ."[66] There is no requirement that a forum-selection clause and its contents be reasonably *communicated* to the non-signatory; rather, the doctrine may be applied so long as there is a judicial finding, supported by evidence, that enforcement and the actual forum are foreseeable.[67]

In a parallel context, the Third Circuit has recognized that "courts have bound a signatory to arbitrate with a non-signatory '. . . because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the nonsignatory's obligations and duties in the contract . . . and [the fact that] the claims were intimately founded in and intertwined with the underlying contract obligations.'"[68] Based on similar reasoning, district courts in this Circuit have applied the closely related parties doctrine and enforced forum-selection clauses against non-signatories where their actions and interests "are inextricably intertwined with the contract dispute underlying [the] case."[69]

---

[64] *McGraw-Hill*, 909 F.3d at 63 (quoting *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 219 (3d Cir. 2015)).

[65] *Id.* at 64 (citing *Howmedica*, 867 F.3d at 407 n.13).

[66] *Id.* at 65.

[67] *Id.*

[68] *DuPont*, 269 F.3d at 199 (quoting *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995)).

[69] *Meridian Bank v. Sandy Spring Bank*, No. 22-3951, 2023 WL 8258769, at *5 (E.D. Pa. Nov. 29, 2023) (citing *Synthes, Inc. v. Emerge Med.*, 887 F. Supp. 2d 598, 613 (E.D. Pa. 2012)).

13

3. Analysis of Proffered Evidence

At the July 24 hearing, Plaintiffs' counsel represented that in 2018, when Fuchs first joined the business venture, he was brought on as an employee of his wife, Hilary, and as an employee of SME. Counsel stated that Fuchs "did accounting software things" and worked for SME but was paid by Hilary.[70] Defendants similarly asserted through counsel, without objection from Plaintiffs, that "the arrangement essentially was that SME would pay the Mackler team, and then the Mackler team would pay their employees or contractors, which included Mr. Fuchs, accordingly."[71] The parties were present and were prepared to testify to those facts.

The representations at the hearing were consistent with the allegations of the FAC, which describe Fuchs as "an outside salesperson" who joined SME "as part of the Macklers' Distribution Business sales team," and who coordinated closely with his wife to raise objections and propose adjustments after identifying purported discrepancies in SME's financials.[72] The FAC also refers collectively to the Macklers, including "Ari in more recent years," as "the most significant (by far) producer of Distribution sales" for SME.[73]

Even setting aside that Fuchs is Hilary's husband and Marshall's son-in-law, Fuchs's formal employment relationships with both SME and Hilary are strongly indicative of his close relationship with any pre-existing, compensation-related agreements between the families and entities. Fuchs could not have been involved in any negotiations over the ICAs, given that he did not join the venture until years later. However, he was situated within the existing business structure such that the compensation to which he was entitled was tied directly to the overall

---

[70] Mot. Hr'g Audio Tr., July 24, 2024, at 42:05–42:24 [Doc. No. 16].
[71] *Id.* at 39:33–39:45.
[72] FAC ¶¶ 11, 136, 152–53 [Doc. No. 7].
[73] *Id.* ¶ 189.

14

performance of, and the fulfilment of existing obligations by, the Macklers' sales team. In other words, Fuchs gained a direct benefit.[74] Indeed, alongside his wife and father-in-law, Fuchs now brings breach of contract and related claims against SME and the Rouens predicated on various other allegedly long-standing agreements predating his hiring in 2018. Put simply, Fuchs's interests are inextricably intertwined with the broader relationship between the Macklers and the Rouens, and that relationship necessarily includes compensation-related agreements they executed before Fuchs joined the venture. This is not a case where, for example, Fuchs was only in privity with the Macklers and the Macklers acted as an arms-length intermediary.[75]

For similar reasons, the Court finds, based on the present record, that enforcement of the forum-selection clauses against Fuchs was foreseeable to him. It should not come as a surprise to Fuchs that a potential dispute between the families would be adjudicated in the North Carolina courts, given that SME has been based there for decades, SME's facilities and employees are located there, and Fuchs's wife and father-in-law were regularly traveling there for business purposes long before he joined the venture. This Court need not find that the ICAs or the forum-selection clauses within them were, in fact, reasonably communicated to Fuchs. The current record is sufficient to find that North Carolina was foreseeable to him as the forum for the present dispute. It was also foreseeable to Fuchs that he would be bound by an agreement his wife (and employer) previously signed, setting forth terms governing a business relationship which he joined and from which he later benefited.[76]

---

[74] Plaintiffs' counsel has referred favorably to the 33% commission provided for in the ICAs and, accordingly, has sought clarification from Defendants regarding whether they view the ICAs as the controlling agreements.

[75] *Cf. McGraw-Hill*, 909 F.3d at 63 (distinguishing between contract signed by plaintiff photographers and stock photography agency and later contract signed by agency and licensee).

[76] Because the Court holds that the forum-selection clauses in the ICAs may be enforced against Fuchs under the closely related parties doctrine, it need not consider whether he was a third-party beneficiary of the ICAs.

15

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to transfer will be granted. An appropriate order will be entered.